IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| REGINA MAE SCHMIDT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 13-539 |
| | ) | |
| v. | ) | Judge Terrence F. McVerry/ |
| | ) | Chief Magistrate Judge Lisa Pupo Lenihan |
| CAROLYN W. COLVIN, ACTING | ) | |
| COMMISSIONER OF SOCIAL | ) | ECF Nos. 9 and 15 |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

### I.   Recommendation

Plaintiff Regina Mae Schmidt ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final determination of the Commissioner of Social Security ("Defendant") denying her application for Supplemental Security Income ("SSI") under Title II of the Social Security Act ("Act") [42 U.S.C. §§ 401-433]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. (ECF Nos. 9 & 15). For the reasons that follow, it is respectfully recommended that the Court Grant Plaintiff's motion for summary judgment to the extent that it requests a remand, Deny Plaintiff's motion to the extent that it requests that judgment be entered in favor of Plaintiff, and Deny Defendant's motion for summary judgment.

### II.   Procedural History

Plaintiff applied for SSI benefits on December 22, 2009 alleging a disability onset date of June 11, 2007. R. at 107-113.[1] In her initial disability report, Plaintiff stated that she was disabled due to depression. R. at 40. Plaintiff's claim was denied by the SSA on May 18, 2010.

---

[1] Citations to ECF Nos. 5-2—9, the Record, *hereinafter*, "R. at__."

R. at 64-68. In her disability report appeal application, Plaintiff mentioned that she was suffering from difficulty with her shoulder and had sought further treatment. R. at 164, 167. On June 14, 2010, Plaintiff filed a timely application for a hearing before an Administrative Law Judge ("ALJ"). R. at 69-72.

Two hearings were scheduled in this case and Plaintiff appeared on both occasions. The initial hearing was held before the ALJ, John Kooser, on June 28, 2011. R. at 24-31. Plaintiff appeared at this hearing unrepresented by counsel. R. at 26. Noting that this was Plaintiff's first hearing and that she was unrepresented, the ALJ asked Plaintiff if she would like to postpone the hearing until she had an opportunity to seek representation, to which Plaintiff agreed. R. at 29. Plaintiff was warned that the rescheduled hearing would proceed regardless of whether she obtained counsel. *Id.* The rescheduled hearing was held on November 1, 2011 before the same ALJ. R. at 32. Plaintiff appeared without representation, but stated that she recalled the warning that the rescheduled hearing would proceed regardless of whether she had obtained counsel. R. at 34-35. Plaintiff and an impartial vocational expert testified under oath. R. at 41-57. The ALJ denied Plaintiff's claim for SSI in a decision dated December 29, 2011. R. at 20.

On February 29, 2012, Plaintiff requested a review of the ALJ's decision. R. at 6. The Appeals Council denied Plaintiff's request for review on March 7, 2013, thereby making the ALJ's decision final.[2] R. at 1-4. Seeking judicial review of the Appeals Council's decision, Plaintiff filed her complaint in the United States District Court for the Western District of Pennsylvania on April 4, 2013. (ECF No. 2). Although Plaintiff was not represented by counsel during the hearing, she obtained counsel to assist her in the instant appeal. (ECF No. 9).

---

[2] The Court has jurisdiction to review only the Commissioner's "final decision." *Califano v. Sanders*, 430 U.S. 99, 108-109, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Bacon v. Sullivan*, 969 F.2d 1517, 1519-1521 (3d Cir. 1992). The ALJ's decision became the Commissioner's ("Defendant's") "final decision" in this case when the Appeals Council denied Plaintiff's request for review.

Defendant filed its answer on July 3, 2013. (ECF No. 4). Plaintiff and Defendant filed cross motions for summary judgment on August 5, 2013 and November 7, 2013, respectively. (ECF Nos. 9 & 15).

## III.   Statement of the Case

### a.   General Background

Plaintiff's was born on July 25, 1968 and was 43 years old at the time of the hearing on November 1, 2011. R. at 41. Plaintiff is five feet tall and testified that she weighed approximately 285 pounds at the time of the hearing. *Id.* Plaintiff has two children, a son and a daughter, who were fifteen and eleven years old, respectively, at the time of the hearing. *Id.* She was living with her fiancé in a trailer along with her daughter; her son lived with his father. *Id.* Plaintiff's sources of income were public assistance, food stamps, and money her fiancé received for working as a handyman. R. at 42. Plaintiff had medical coverage through public assistance. *Id.* Plaintiff never tried to acquire a driver's license but public transportation was available in her area. R. at 42-43. Plaintiff quit high school when she was in the ninth grade but has not received her Graduate Equivalency Diploma ("GED"). R. at 43. Plaintiff testified that she was able to read, subtract, and make change. *Id.*

### b.   Employment History

Plaintiff previously worked as a cashier, stocker, and a bar tender. R. at 44, 133-140. She has not worked since February 2004. *Id.* Plaintiff testified that she quit her last job because she was not given enough hours and also because she was addicted to drugs at the time. R. at 44. She stated that she had recently applied for a job at Trader Horn but was not actively looking for work. R. at 44-45

### c.   Physical Treatment History

3

On October 22, 2009, Plaintiff was seen by for an initial evaluation by Dr. Leonard

Zadecky, M.D., at the Butler County Community Health Clinic. R. at 198-201. There are few

physical findings recorded in the notes from that visit, but Dr. Zadecky did observe that Plaintiff

was obese. R. at 199. Further, a body pain diagram in the notes indicates that Plaintiff

complained of pain in her shoulder. *Id.* The record does not evidence that Plaintiff received any

further treatment from the Butler County Community Health Clinic.

Plaintiff was treated by Dr. Hugh Shearer, D.O., on April 2, 2010, at which time she

complained of pain in the anterior of her shoulder that occurred when she extended her arm

across her body, when lifting her arm above her head, and occasionally when she rotated her

arm. R. at 274. Dr. Shearer recorded a mildly positive Hawkin's[3] test, a mildly positive empty

can test[4], and a restricted range of motion in all planes. *Id.* She was also suffering from

migraine headaches. *Id.* Plaintiff returned to Dr. Shearer on April 9, 2010 with further

complaints of shoulder pain. R. at 275. Dr. Shearer noted she had experienced a significant

reduction in her headaches since increasing her dosage of Topamax[5] six weeks prior. Dr.

Shearer recorded a positive Hawkin's test, a negative empty can test, and full range of motion.

*Id.* Plaintiff was prescribed Tramadol[6] for her pain, physical therapy, and an X-ray of her

shoulder. (*Id.*). Dr. Joseph Angesi, M.D., examined that X-ray and observed the following:

---

[3]     "The Hawkin's test is another commonly performed of impingement. It is performed by elevating the patient's arm forward to 90 degrees while forcibly internally rotating the shoulder. Pain with this maneuver suggests subacromial impingment or rotator cuff tendonitis." American Family Physician, *The Painful Shoulder: Part 1. Clinical Evaluation, available at http://www.aafp.org/afp/2000/0515/p3079.html#afp20000515p3079-b5* (last visited November 19, 2013).

[4]     "The supraspinatus can be tested by having the patient abduct the shoulder to 90 degrees in forward flexion with the thumbs pointed downward. The patient then attempts to elevate the arms against examiner resistance. This is often referred to as the 'empty can' test." *Id.*

[5]     Topiramate (brand name 'Topamaz') is used to help prevent migraine headaches. Mayoclinic.com, Topiramate, http://www.mayoclinic.com/ health/drug-information/DR601527 (last visited December 12, 2013).

[6]     "Tramadol is used to relieve moderate to moderately severe pain, including pain after surgery." Mayoclinic.com, Tramadol, http://www.mayoclinic.com/health/drug-information/DR601787 (last visited December 12, 2013).

minimal degenerative change, no acute fracture or dislocation, and no acute bony abnormality. R. at 309. Calcific tendinitis was not excluded. *Id.*

On April 30, 2010, Plaintiff visited Dr. Shearer for a follow up on her shoulder, complaining of continued pain. R. at 276. She stated that she had attended physical therapy twice and that she thought that it helped.[7] *Id.* Plaintiff complained that the medications Diclofenac[8] and Tramadol did not seem to be working. R. at 276. Dr. Shearer observed some tenderness in the anterior, deltoid, and posterior aspects of Plaintiff's shoulder in addition to pain with abduction and flexion. *Id.* Further, Dr. Shearer stated that there was no edema[9], no effusion[10], and that the Hawkin's and empty can tests were both negative. Plaintiff was prescribed Tylenol #3, continued physical therapy, and a follow up appointment in two weeks. R. at 276.

Plaintiff returned to Dr. Shearer on August 13, 2010, almost four months after her previous visit. R. at 277. Plaintiff complained of headaches and shoulder pain and sought a refill of Tylenol #3. *Id.* She told Dr. Shearer that she would be seeing an eye doctor soon because of the likelihood that her headaches were vision related. *Id.* Dr. Shearer refilled her prescription but advised her that it could make her pain worse in the long-term. *Id.* Further, Plaintiff was advised that if her headaches did not improve after seeing an eye doctor she would

---

[7]     Plaintiff's disability form appeal indicates that her last physical therapy session was May 13, 2010 and that she did not schedule a further appointment. R. at 157.
[8]     "Diclofenac is a nonsteroidal anti-inflammatory drug (NSAID) used to treat mild-to-moderate pain, and helps to relieve symptoms of arthritis." Mayoclinic.com, Diclofenac, http://www.mayoclinic.com/health/drug-information/DR602207 (last visited December 12, 2013).
[9]     "Edema" is defined as: "1. An accumulation of an excessive amount of watery fluid in cells or intercellular tissues. 2. At the gross level, used to describe the physical sign commonly likened to swelling or increased girth that often accompanies the accumulation of fluid in a body part, most often a limb." Stedman's Medical Dictionary 612, (28th ed. 2005).
[10]     "Effusion" is defined as: "1. The escape of fluid from the blood vessel's or lymphatics into the tissues or a cavity. 2. A collection of the fluid effused." *Id.* at 616.

have to return for a "further work up." *Id.* The record does not evidence that Plaintiff received any further treatment from Dr. Shearer.

### d. **Mental Treatment History**

On April 30, 2007, Plaintiff was diagnosed with depressive disorder and poly substance dependence at Irene Stacy Community Mental Health Center. R. at 226. During treatment at the mental health center, Plaintiff consistently rated her mood between 7/10 and 8/10 and described it as "good" or "alright." R. at 227-232. Plaintiff was seen by the mental health center on only four occasions and her case was later closed due to non-compliance with treatment. R. at 226.

Plaintiff was involuntarily admitted to Butler Memorial Hospital from September 2, 2009 to September 4, 2009 after consuming approximately twenty beers and becoming acutely suicidal. R. at 175, 177, 180. Plaintiff's mental status examination indicated unremarkable findings. R. at 178. The consultation report assessed Plaintiff with depression, alcohol abuse, and a history of substance abuse. R. at 180. Plaintiff was prescribed Zoloft[11] to treat her depression. R. at 179. Upon discharge, her condition was recorded as "[m]edically and psychiatrically stable." R. at 176.

Plaintiff was next evaluated by Dr. Zadecky at the Butler County Community Health Clinic on September 22, 2009. R. at 198-204. In his review of symptoms, Dr. Zadecky noted that Plaintiff was depressed, suicidal, and anxious. R. at 199. Treatments notes from that exam contain no additional mental health findings.

Plaintiff began treatment at Butler Wellness Support Services ("Wellness Works") on March 1, 2010. R. at 208. She was assessed with the following: flat affect, rapid speech, depressed/anxious mood, normal thought content, fair judgment, fair insight, fair

---

[11]     Sertaline (brand name 'Zoloft') is used to treat mental depression, panic disorder, and social anxiety disorder. Mayoclinic.com, Sertraline, http://www.mayoclinic.com/health/drug-information/DR601237 (last visited December 12, 2013).

attention/concentration, fair memory, good impulse control, passive suicidal ideation, and a Global Assessment of Functioning[12] ("GAF") score of 50. R. at 211. Plaintiff completed an anxiety inventory which ranked potential symptoms on a scale of "mildly" to "severely." R. at 214. Plaintiff was "mildly" "bothered" by the following anxiety symptoms: unable to relax, unsteady, nervous, and shaking. *Id.* Plaintiff was not "bothered" by any of the remaining fifteen anxiety symptoms on the inventory. *Id.*

From March 1, 2010 to November 16, 2011, Plaintiff attended fifty-two of her sixty-two scheduled appointments at Wellness Works. R. at 207-219, 328-333. With the exceptions of March 12, 2012 and March 29, 2010, at no time was Plaintiff's depression or anxiety recorded as severe. R. at 215, 217. For the duration of her treatment Plaintiff's depression and anxiety symptoms were consistently recorded as none, mild, or moderate. R. at 207-219, 328-333. On November 2, 2011, Erik Cohen, L.S.W., who began treating Plaintiff at Wellness Works on August 18, 2011, opined in a letter that Plaintiff was too affected to be gainfully employed. R. at 328, 343.

On May 5, 2010, Dr. David Newman, PhD., completed a Clinical Psychological Disability Evaluation of Plaintiff on behalf of the Pennsylvania Bureau of Disability Determination. R. at 238-241. Plaintiff was observed as mildly overweight, not exhibiting anxiousness, alert, responsive to questions, and coherent. R. at 239. Dr. Newman opined that despite Plaintiff's reports to the contrary, either Zoloft was entirely suppressing her symptoms or depression was not present. R. at 240. Further, Dr. Newman noted the possibility that a history of alcohol and substance abuse had played a role in her mental health condition. *Id.* Dr.

---

[12] Global Assessment of Functioning is a numeric score ranging from 0 to 100 reported on Axis V of the Multiaxial Assessment. American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (DSM-IV-TR) 32-33 (4th ed. 2000). The "Axis V is for reporting the clinician's judgment of the individual's overall level of functioning. This information is useful in planning treatment and measuring its impact, and in predicting outcome." *Id.*

Newman diagnosed Plaintiff with alcohol dependence, poly substance dependence, and major depressive disorder (which he classified as "recurrent, in remission (rule out)"). *Id.* Plaintiff was assessed with the following limitations: a moderate limitation in her ability to understand and remember short, simple instructions; a moderate to marked limitation in her ability to understand and remember detailed instructions; and a moderate limitation in her ability to interact appropriately with the public. R. at 240-241. Dr. Newman assessed no other limitations. *Id.*

Dr. Manella Link, Ph.D., completed a psychiatric review technique of Plaintiff on May 06, 2010. R. at 248-261. Plaintiff was assessed with affective disorders, personality disorders, and substance addiction disorders. R. at 248. Dr. Link assessed Plaintiff's limitations with regard to the "paragraph B" criteria and concluded that she had moderate difficulties in maintaining social function[13] and moderate difficulties in maintaining concentration, persistence, or pace[14]. R. at 258. Plaintiff had no limitation in daily living.[15] *Id.* Dr. Link noted that there was not sufficient evidence to determine whether Plaintiff had suffered any episodes of decompensation.[16] *Id.* Finally, the evidence did not establish the presence of "paragraph C" criteria. R. at 259.

---

[13]    "Social functioning refers to your capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals. Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers." 20 C.F.R., Pt. 404, Subpt. P, App'x 1, Listing 12.00(C)(2).

[14]    "Concentration, persistence, or pace refers to the ability to sustain focused attention and concentration sufficiently long to permit the timely and appropriate completion of tasks commonly found in work settings." 20 C.F.R., Pt. 404, Subpt. P, App'x 1, Listing 12.00(C)(3).

[15]    "Activities of daily living include adaptive activities such as cleaning, shopping, cooking, taking public transportation, paying bills, maintaining a residence, caring appropriately for your grooming and hygiene, using telephones and directories, and using a post office." 20 C.F.R., Pt. 404, Subpt. P, App'x 1, Listing 12.00(C)(1).

[16]    "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 C.F.R., Pt. 404, Subpt. P, App'x 1, Listing 12.00(C)(4)

Dr. Mark Matta, D.O., completed a psychiatric evaluation of Plaintiff on May 27, 2010 and diagnosed Plaintiff with major depressive disorder, anxiety, social phobia, and substance abuse (in remission). R. at 265. Dr. Matta assigned Plaintiff a GAF score of 49. *Id.* Plaintiff saw Dr. Matta on three separate occasions. R. at 263. The treatment notes from these visits are unremarkable and uniformly report the following: good medication compliance, no side effects, and mood improving from "down" to "ok." *Id.*

### e. The Administrative Hearing

Plaintiff's second hearing was held on November 1, 2011. R. at 34. Plaintiff testified under oath that she quit high school in the ninth grade and did not receive her GED despite the assistance of a tutor. R. at 43. She stated, however, that she was able to read and do subtraction. R. at 43-44. Her past jobs were cashier and stocker. R. at 44. Plaintiff's last job was at a bar/restaurant but she quit due to a lack of hours and drug addiction. *Id.* She stated that depression had "a little" to do with her quitting that job. *Id.* She had not worked since February 2004. *Id.* Although Plaintiff was no longer looking for work at the time of the hearing, she had previously applied for a position at Trader Horn. R. at 44-45. The ALJ's questioned whether she might be able to do certain jobs and Plaintiff responded that it depended on her anxiety and depression. R. at 45.

Plaintiff then testified to experiencing anxiety attacks, for which she took Prozac,[17] and that the attacks occurred regardless of whether she was alone or around other people. R. at 45-46. Nightmares kept her awake at night and she was prescribed sleeping pills but did not recall the names of the drugs. R. at 46. Plaintiff next testified that she experienced migraine headaches two to three times per week for which she took Topamax with varying success. R. at 47. She

---

[17] Fluoxetine (brand name "Prozac") is used to treat depression. Mayoclinic.com, Fluoxetine, http://www.mayoclinic.com/health/drug-information/DR600689 (last visited December 13, 2013).

stated that she took ibuprofen in addition to her prescribed medication. R. at 48. Plaintiff testified that she would lie down for a few hours when the headaches occurred. *Id.*

The ALJ then solicited testimony regarding Plaintiff's past psychiatric hospitalization. *Id.* Plaintiff testified that she was last hospitalized in 2010 for attempting suicide, which she had tried many times. R. at 49. Upon inquiry by the ALJ, she acknowledge that half of her psychiatric hospitalizations involved drugs and alcohol. *Id.* Plaintiff testified that she was addicted to methamphetamine until 2004, at which time she entered court ordered rehab. R. at 50. She stated that she still occasionally smoked marijuana and although she previously drank alcohol "all the time," she now drank only once every other week. *Id.* Her depression had reportedly not improved since she reduced her intake of drugs and alcohol. *Id.*

Plaintiff next testified that her daily activities consisted of waking between 4:00 and 6:00 a.m. to get her daughter up for school and roll cigarettes. R. at 51. She occasionally cooked breakfast for her daughter, but her daughter usually ate at school. *Id.* Either Plaintiff or her fiancé would put her daughter on the school bus in the morning. *Id.*

Plaintiff testified that she was "nasty" in the mornings due to anxiety and that she did not want to wake up. *Id.* She stated that she was irritated all of the time and that she got upset at people at home and in public. *Id.* Plaintiff experienced mood swings on a regular basis. R. at 51-52. Plaintiff testified that although she had to be reminded to attend the hearing that day, she did not typically have memory difficulties. R. at 52.

The ALJ inquired further into Plaintiff's daily activities. R. at 52-53. Plaintiff testified that she did not like people and would not leave home unless it was for groceries or an appointment. *Id.* She did, however, attend events at her daughter's school and had taken her trick or treating the day before the hearing. R. at 53. Plaintiff testified that she did not always

shower and once went for an entire week without bathing. *Id.* She stated that she no longer watched football, attended her son's baseball games, or rode bikes with her kids. *Id.*

The ALJ asked whether Plaintiff thought she could do jobs that required little to no interaction with other people. R. at 54-55. She responded that she would probably be able to if there were no other people around but that she would not be a reliable employee who showed up every day. *Id.* This was attributed to her depression, which she said could disable her for a week at a time. R. at 55. She testified, however, that she could go for up two months without being depressed. *Id.* Plaintiff stated that she had formerly attended Alcoholics Anonymous but no longer attended any social groups or churches. R. at 56. Finally, Plaintiff testified that her therapist had opined that she should not work. R. at 56. The ALJ suggested that Plaintiff obtain a letter setting forth his explanation. R. at 57.

The ALJ proceeded with an examination of the vocational expert, Karen Kroll, M.Ed.[18] R. at 58. Ms. Kroll summarized Plaintiff's work history as a cashier as light and semi-skilled and her job as a stocker as medium unskilled. *Id.* The ALJ's first hypothetical was identical to his RFC. R. at 15, 58. Ms. Kroll testified that such an individual would be able to perform the jobs of stocker, dishwasher, and cleaner. R. at 59-60. Finally, the ALJ formulated three additional hypotheticals. R. at 60. The first posited an individual who missed multiple days of work per week due to depression. *Id.* The second featured a person who could not maintain appropriate interactions with supervisors. *Id.* Finally, the ALJ described a person who was off task during work fifteen to twenty percent of the time. *Id.* Ms. Kroll stated that none of these individuals would be able to work. *Id.*

## IV.   **Standard of Review**

---

[18]     Ms. Kroll has been a self-employed vocational expert since 1987. She holds an M.Ed. in rehabilitation counseling and a B.S. in psychology, both from the University of Pittsburgh.

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Comm'r of Soc. Sec. Admin*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). The Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Med. Ctr.v. Heckler*, 806 F.2d 1185, 1190-1191 (3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Sec'y of Health & Human Serv.*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any

other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively-delegated rulemaking authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process by stating as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity." [20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Id.* at 196. The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

## V.    The ALJ's Decision

The ALJ found that Plaintiff had not engaged in substantial activity since the date of her application, December 22, 2009. R. at 13. Plaintiff was found to have the following severe impairments: major depressive disorder, personality disorder, alcohol dependence, and substance abuse in remission. *Id.* Plaintiff's diagnoses of stress urinary incontinence and hemorrhagic right ovarian cyst were found to be nonsevere because neither caused more than a minimal

restriction on an ongoing basis sufficient to meet to twelve consecutive month durational requirement. R. at 13. Plaintiff does not dispute this finding of nonseverity on appeal.

The ALJ found that Plaintiff did not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. R. at 14. The severity of Plaintiff's mental impairments, considered individually or together, did not meet the criteria of listings 12.04, 12.08, 12.09. *Id.* Plaintiff was found to have the following limitations: no more than a mild limitation in the activities of daily living; no more than moderate limitations in social functioning or concentration; and no episodes of decompensation. Accordingly, the ALJ concluded that the "paragraph B" criteria were not satisfied. *Id.* The ALJ then determined that the "paragraph C" criteria were not satisfied. *Id.*

The ALJ found that Plaintiff had the following residual functional capacity[19] ("RFC"):

> [C]laimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: she would be limited to jobs involving no more than simple, routine, repetitive tasks, which could be performed in a low stress work environment, which I define as involving no high volume productivity requirements, very infrequent unexpected changes in the workplace (it is a stable, predicable atmosphere), and no complex decision-making; she would be limited to jobs involving no interaction with the public, no more than occasional superficial interaction with co-workers (there could be a small number of co-workers in the workplace, but it would not be necessary to interact to carry out job duties) and no more than occasional interaction with supervisors.

R. at 15. In light of the record and Plaintiff's testimony, the ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged

---

[19]     The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

symptoms. R. at 16. The ALJ found Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms to be not credible to the extend they were inconsistent with the ALJ's RFC. *Id.* Plaintiff's testimony and subjective complaints were found to be inconsistent with the record. *Id.*

The ALJ noted Plaintiff's testimony that she had applied for a job in the stock room at Trader Horn. R. at 18, 44-45. Plaintiff was found to be capable of performing past relevant work as a stocker. R at 19. Finally, the ALJ found that Plaintiff has not been under a disability, as defined in the Act, since the date of her application, December 22, 2009. *Id.* The ALJ's decision did not include any mention of Plaintiff's alleged headaches or shoulder pain.

## VI.    Discussion

On appeal, Plaintiff offers several arguments in objection to the ALJ's decision. (ECF No. 10). Plaintiff argues that the ALJ: (1) failed to secure an adequate waive of counsel and failed to adequately develop the record; (2) erred when he found that Plaintiff did not have any severe physical impairments; (3) improperly disregarded the medical opinion of Plaintiff's treating mental health providers; (4) erred in determining Plaintiffs residual functional capacity; and (5) improperly disregarded the testimony of the vocational expert and relied on an incomplete hypothetical question. (ECF No. 10). Defendant counters that the ALJ's decision was supported by substantial evidence. (ECF No. 16 at 9).

### a.  The ALJ Failed to Developed the Record which Resulted in Administrative Unfairness to the Unrepresented Plaintiff

Plaintiff's primary arguments are that the ALJ failed to secure an adequate waiver of counsel and failed to develop the record. (ECF No. 10 at 12). Defendant responds that the Plaintiff knowingly and intelligently waived her right to counsel. (ECF No. 16 at 9-10). Further,

Defendant argues that Plaintiff received a full and fair hearing because the ALJ fully developed the administrative record. (*Id.*).

Although there is not a constitutional right to counsel at a social security disability hearing, there is a statutory right under the Act. 42 U.S.C. § 406. *See Phifer v. Comm'r of Soc. Sec.*, 84 F. App'x 189, 191 (3d Cir. 2003). A social security claimant must have been given notice of the right to counsel, and that right may be waived only by a knowing, voluntary, and intelligent waiver. *Howe v. Astrue*, Civ. A. No. 12-93, 2013 WL 593975, at *2 (W.D. Pa. Feb. 14, 2013) (citing *Vivaritas v. Comm'r of Soc. Sec.*, 264 F.App'x 155, 158 (3d Cir. 2008)). A remand for ineffective waiver of counsel is only proper when clear prejudice or unfairness at the hearing can be shown. *Capoferri v. Harris*, 501 F. Supp. 32, 38 (E.D. Pa. 1980) *aff'd,* 649 F.2d 858 (3d Cir. 1981) (citing *Domozik v. Cohen*, 413 F.2d 5, 9 (3d Cir. 1969)).

It is not necessary to decide whether there was an effective waiver of counsel in this case because the court finds that Plaintiff suffered unfairness when the ALJ failed to adequately develop the record. Regardless of whether a waiver is valid, a reviewing court must determine whether the claimant suffered administrative unfairness due to lack of counsel. *See Howe,* 2013 WL 593975, at *2 (declining to analyze the validity of a waiver when it was clear that a *pro se* claimant suffered administrative unfairness). If unfairness resulted from Plaintiff's lack of representation, an effective waiver will not preclude remand. *Id.* It is not necessary that Plaintiff demonstrate what additional evidence could have been obtained in order to show prejudice. *Rosa v. Colvin*, Civ A. No. 12-5102, 2013 WL 3466424, at *6 (E.D. Pa June 28, 2013) (citing *McLeod v. Astrue*, 640 F.3d 881, 887-888 (9th Cir. 2010).

In reaching a disability determination, it is the ALJ's duty to investigate fully all matters at issue and to develop a complete record. *Stauffer v. Califano*, 693 F.2d 306, 308 (3d Cir. 1982)

(citing *Diabo v. Sec. of Health, Educ. and Welfare*, 627 F.2d 278, 281-282 (D.C. Cir. 1980)). When a claimant appears *pro se*, the ALJ has a heightened duty to help develop the record by seeking all of the relevant facts. *Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003). Administrative unfairness may be found when the ALJ fails to adequately develop the record. *Howe*, 2013 WL 593975, at *4. Although the ALJ's duty to develop the record is heightened when a claimant appears pro se, the claimant's pro se status does not convert the ALJ into the claimant's advocate. *Pryor v. Astrue*, Civ. A. No., 08-312, 2009 WL 890581, at *4 (W.D. Pa. March 27, 2009). The Third Circuit does not prescribe any particular procedures that an ALJ must follow in developing the record when a claimant appears *pro se*. *Reefer*, 326 F.3d at 380. The adequacy of the ALJ's development of the record is determined on a case to case basis. *Id.* (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1052 (6th Cir. 1983)).

Defendant asserts that Plaintiff has consistently maintained that she is disabled from work solely as a result of mental impairments and therefore the ALJ did not err when he neglected to address her alleged physical impairments in his decision. (ECF No. 16 at 11). Defendant's argument is without merit. In light of Plaintiff's level of education, lack of counsel at the hearing, and inconsistences in the record regarding the conditions which allegedly disable Plaintiff from work, the ALJ failed to develop the record. *See Diabo v. Sec. of Health Educ. and Welfare*, 627 F.2d 278, 282 (D.C. Cir. 1980) (rejecting the argument that the ALJ was not required to acquire medical records which were unrelated to the impairments the claimant listed on his application for disability). Defendant correctly notes the following: Plaintiff initially listed her disabling condition as depression; Plaintiff affirmed that she was disabled due to depression and anxiety throughout the hearing; and Plaintiff told Dr. Newman that she was disabled as a result of anxiety. R. at 40, 45, 58-59, 146, 238. Plaintiff's disability report appeal

application, however, mentions that Plaintiff was suffering from difficulty with her shoulder and was seeking further treatment. R. at 164, 167. Further, Plaintiff started to discuss her shoulder during the hearing but it appears from the transcript that she was interrupted by the ALJ. R. at 38. Later in the hearing, the ALJ asked Plaintiff about the severity and treatment of her migraine headaches. R. at 47. For the duration of almost two entire pages in the transcript, Plaintiff testified that she gets migraine headaches at least two to three times per week and has to lay down a few hours each time they occur. R. at 47-48. "A technical application of the rules of pleading is inappropriate to the informal proceedings provided in disability determinations." *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979). Although Plaintiff did not list migraines and shoulder pain on her initial application for disability, the ALJ should have fully developed the record regarding these alleged impairments.

The ALJ's duty was to fully explore Plaintiff's testimony of shoulder pain and headaches and explain the importance of providing all relevant evidence during the hearing. *See Brittingham v. Weinberger*, 408 F. Supp. 606, 611 (E.D. Pa. 1976) (providing that when a claimant appears *pro se*, a "duty devolves upon the administrative law judge to, at a minimum, emphasize to the claimant the importance of providing all the relevant evidence."). "[W]here the record reveals evidence of an impairment, precedent in our circuit would suggest that the ALJ should at least confirm the attorney's waiver of consideration of this impairment with the claimant, and...inform the claimant of the importance of the information." *Hippensteel v. Soc. Sec. Admin.*, 302 F.Supp.2d 382, 390 (M.D. Pa. 2001). "[T]he ALJ must consider the combined effect of multiple impairments, regardless of their severity." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 123 (3d Cir. 2000). The claimant in a social security case bears the burden of demonstrating disability. *Cotter v. Harris*, 642 F.2d 700, 708 (3d Cir. 1981). A social

security hearing is not, however, an adversarial proceeding, and the SSA will provide the claimant assistance in proving her claim. *Hess v. Sec. of Health, Ed. and Welfare*, 497 F.2d 837, 840 (3d Cir. 1974) (quoting *Easley v. Finch*, 431 F.2d 1351, 1353 (4th Cir. 1970)). The ALJ asked Plaintiff to confirm that her alleged disability was the result of mental impairments:

> Q:     It's not really documented in the records so I'm finding that you don't have any problems lifting, being on your feet, things like that, physically and we did agree that your main issue is your mental health condition, is that correct?
> CLMT: Yes.

R. at 59. When considered alongside Plaintiff's earlier testimony that she experienced migraine headaches and shoulder pain, this exchange evidences that the ALJ recognized the possibility that Plaintiff had both physical and mental impairments but the ALJ failed to fully explore them. *See Hippensteel*, 302 F.Supp.2d at 390 (finding that a nearly identical exchange between the ALJ and a *pro se* claimant suggested that the ALJ recognized the possibility of additional impairments which should have been further explored in developing the record). Accordingly, the ALJ should have confirmed Plaintiff's waiver of these alleged impairments after explaining the importance of presenting all relevant evidence of her disability.

Plaintiff further argues that the ALJ failed to develop the record by neglecting to order a consultative examination of Plaintiff's alleged physical impairments. (ECF No. 10 at 15). Based on the limited extent to which these alleged impairments were discussed during the hearing, it is not evident whether the ALJ erred by not ordering a consultative examination. The ALJ was not obligated to order consultative examinations which he did not believe were necessary to reaching an accurate disability determination. *Harshey v. Colvin*, Civ. A. No. 12-1112, 2013 WL 607651, at *7 (W.D. Pa Feb. 19, 2013). It is within the sound discretion of the ALJ to decide whether to order a consultative examination. *Thompson v. Halter*, 45 Fed.App'x. 146, 149 (3d. 2002). On rehearing, the ALJ should develop the record with regard to Plaintiff's alleged migraines and

shoulder pain in order to determine whether a consultative examination is necessary in reaching an accurate disability determination.

Plaintiff proceeds to argue that because Step 2 of the sequential analysis is a *de minimis* screening device, the ALJ should have found Plaintiff's alleged obesity, shoulder pain, and migraines to be severe. (ECF No. 10 at 15). Defendant counters that Plaintiff's claim of severe physical impairments is not substantiated by the record. (ECF No. 16 at 11-12). As mentioned above, the ALJ did not make any findings whatsoever regarding these alleged impairments. "[A]n administrative decision should be accompanied by a clear and satisfactory explication of the basis on which it rests." *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981). It is the ALJ's duty "to hear and evaluate all relevant evidence in order to determine whether an applicant is entitled to disability benefits." *Id.* On remand the ALJ should fully develop the record and reach a finding as to the severity of Plaintiff's alleged headaches and shoulder pain or provide an explanation supported by substantial evidence for why they were not considered in the disability determination.

Finally, with regard to Plaintiff's alleged obesity, the only medical evidence suggesting that Plaintiff was obese appears in the 2009 treatment notes from the Butler County Community Health Clinic. R. at 199. On a check mark physical exam form, Dr. Zadecky indicated that Plaintiff was obese but did not qualify her condition as "mild," "moderate," or "morbid" although those options were available on the form. *Id.* Further, no limitations were attributed to Plaintiff's weight. In *Rutherford v. Barnhart*, 399 F.3d 546, 552-553 (3d Cir. 2005), the claimant, who unlike Plaintiff in the instant case was represented by counsel at the hearing, similarly argued that the ALJ was obligated to consider her obesity because the claimant was five feet tall and weighed 245 pounds at the time of the hearing. *Id.* The Third Circuit held that

a remand was not warranted when the ALJ did not consider the claimant's obesity because the claimant never mentioned her obesity as contributing to her disability and none of the medical records suggested that it caused any limitation. *Id. See Ellis v. Astrue*, Civ. A. No. 09-1212, 2010 WL 1817246, at *4 (E.D. Pa April 30, 2010) ("The ALJ is not required to discuss obesity if, however, the claimant does not identify obesity as an impairment, the ALJ does not cite it, and no evidence supports its effect on workplace performance."); *See also* S.S.R. 02-1p, 2002 WL 3486281 at 3 (stating that the SSA generally "will not purchase a consultative examination just to establish the diagnosis of obesity"). Accordingly, the ALJ did not err by neglecting to discuss Plaintiff's alleged obesity in his decision.

The ALJ's failure to fully develop the record in light of Plaintiff's level of education and lack of counsel constitutes administrative unfairness for which a remand is proper. In establishing unfairness, Plaintiff need not establish a probability of success based upon evidence that the ALJ failed to consider. *Isaac v. Astrue*, Civ. A.. No. 08-1661, 2009 WL 1492277, 14 (W.D. Pa. May 28, 2009). Remand is appropriate when it is shown that the ALJ did not sufficiently fill evidentiary gaps which are material to his determination. *Id.* If Plaintiff had been represented by counsel during the hearing, additional evidence of Plaintiff's alleged physical impairments would almost certainly have been pursued. *See Dobrowolsky v. Califano*, 606 F.2d 403, 408 (3d Cir. 1979) (finding prejudice sufficient to justify remand when the ALJ failed to pursue evidence of a potentially disabling impairment). Further, counsel would have advised Plaintiff of the significance of presenting all of her alleged disabling impairments to the ALJ and assisted her in testifying as to the basis for her alleged disability. Accordingly, remand is proper in this case so that all the ALJ can fulfill his duty to adequately develop the record.

### a. Plaintiff's GAF Scores

Plaintiff argues that the ALJ improperly disregarded the GAF scores reported in the treatment notes and opinions of Plaintiff's mental health providers. (ECF No. 10 at 17-18). Further, Plaintiff argues that the ALJ did not sufficiently indicate his reasons for disregarding the GAF scores. (ECF No. 10, at 18). I find that Plaintiff's argument lacks merit. Plaintiff notes that between April 30, 2007 and November 16, 2011, Plaintiff received GAF scores ranging from 45-49. (ECF No. 10, at 17-18). Plaintiff argues that a GAF score of 50 or lower indicates "severe mental health impairments which would indicate a disabling mental health condition." (ECF No. 10 at 17). Contrary to Plaintiff's argument, "the Social Security Administration has explicitly declined to endorse the use of the GAF scale because its scores do not have a direct correlation to the disability requirements and standards of the Act." *Coy v. Astrue*, Civ. A. No. 08-1372, 2009 WL 2043491, at *14 (W.D. Pa. July 8, 2009) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). A low GAF score alone, without evidence that it impairs Plaintiff's ability to work, is not necessarily indicative of a claimant's disability status. *Coy*, 2009 WL 2043491, at 14. The ALJ's failure to mention GAF scores is not reversible error. *Id.*

### b. The Letter from Plaintiff's Licensed Social Worker

Plaintiff next argues that the ALJ erred by failing to accord greater weight to the opinion of Plaintiff's therapist Erik Cohen, L.S.W. (ECF No. 10 at 18). Defendant counters that an ALJ need not grant weight to medical opinions which were unsupported or inconsistent with record evidence. (ECF No. 16 at 12). I conclude that the ALJ's decision to grant greater weight to the opinions of Dr. Newman and Dr. Link was supported by substantial evidence. As Plaintiff correctly notes, the opinions of a claimant's treating physician are entitled to substantial and potentially controlling weight. *Fargnoli v. Massanari*, 247 F.3d 34, 43 (3d Cir. 2001). In order for the opinion of a treating physician, however, to be granted greater weight, it must be "well-

supported by medically acceptable clinical and laboratory diagnostic techniques and...not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 416.927(c)(2). After evaluating all of the evidence in the record, the ALJ may assign a non-treating physician's opinion greater weight if that opinion is supported by substantial evidence. *Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011). The ALJ may choose which opinion to credit but may not reject evidence in the record for no reason. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). An ALJ who rejects the opinion of a treating physician outright may do so only on the basis of contradictory medical evidence. *Id.*

The ALJ correctly noted that social workers are not listed in the regulations as a medically acceptable source to establish an impairment. R. at 18. *See* 20 C.F.R. § 416.913(a) (listing physicians, psychologists, optometrists, podiatrists, and speech pathologists as acceptable medical sources). Although social workers do not qualify as medically acceptable sources, the regulations do classify them as "other sources" and provide that their opinions may be used to show the severity of an impairment and how it affects the claimant's ability to work. 20 C.F.R. § 416.913(d). These opinions, "although not technically 'acceptable medical sources' under Social Security rules, are to be evaluated on key issues such as impairment severity and functional effects, although their opinions cannot establish the existence of a medically determinable impairment." *Smith v. Astrue*, Civ. A. No. 08-347, 2008 WL 4853757, n 16 (W.D. Pa. Nov. 6, 2008). The weight of these opinions is to be determined using the same factors as those used in evaluating the opinions of acceptable medical sources, including: the length and frequency of treatment, its consistency with the record, supportability, and the degree of explanation for the opinion. *Id.* For the reasons that follow, the ALJ did not err in granting little weight to Mr. Cohen's opinion.

Contrary to Plaintiff's argument, the ALJ did provide his rationale for granting less weight to Mr. Cohen's opinion. The ALJ found that the opinion was inconsistent with Mr Cohen's own treatment notes and the record as a whole. R. at 18, 328-343. *See Rimel v. Astrue*, 521 F.App'x. 57, 60 (3d Cir. 2013) (concluding that it was appropriate for the ALJ to discredit a physician's opinion when it was inconsistent with the physician's own medical documentation). Mr. Cohen, who began treating Plaintiff at Wellness Works on August 18, 2011, opined in a letter dated November 2, 2011, that Plaintiff was "too affected to be gainfully employed." R. at 328. Treatment notes indicate, however, that Plaintiff's depression was classified as mild on five out of the seven dates that Mr. Cohen completed clinical notes on Plaintiff's condition. R. at 338-343. At no time did Mr. Cohen classify Plaintiff's depression, anxiety, or external stressors as greater than moderate. *Id.* Further, the opinion is not supported by explanations. R. at 18, 328. The ALJ may afford an opinion less weight depending on the extent to which supporting explanations are provided. *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). The opinion is only five sentences long, the pertinent part of which is quoted above. No support was provided for the conclusion that Plaintiff is unable to work. For these reasons, the ALJ's decision to accord little weight to Mr. Cohen's opinion was supported by substantial evidence.

### c. The ALJ's Residual Functional Capacity Finding and Hypotheticals

Plaintiff argues that the ALJ's RFC finding is not supported by substantial evidence. (ECF No. 10 at 20). Defendant counters that none of the medical sources of record have identified any functional limitation that would disable Plaintiff from work and that the ALJ's RFC finding is supported by substantial evidence. (ECF No. 16 at 12). For the reasons that follow, the ALJ's RFC finding is not supported by substantial evidence.

RFC is defined as "the most you can still do despite your limitations. We will assess your residual functional capacity based on all the relevant evidence in your case record." 20 C.F.R. § 416.945(a)(1). When determining a claimant's RFC, an ALJ must consider all of the relevant evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001). Relevant evidence includes "descriptions and observations of your limitations from your impairments(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons." 20 C.F.R. § 416.945(a)(3). The ALJ must reach specific findings regarding all pertinent medical evidence and reconcile any conflicts. *Burnett v. Comm'r of Soc. Sec. Admin,* 220 F.3d 112, 126 (3d Cir. 2000). If any particular evidence is rejected, the ALJ must provide an explanation. *Id.* at 126. The ALJ's RFC finding must be accompanied by a "clear and satisfactory explication of the basis on which it rests." *Fargnoli,* 247 F.3d at 41 (quoting *Cotter v. Harris,* 642 F.2d 700, 704 (3d Cir. 1981)).

In formulating his RFC, the ALJ provided a sufficient discussion of Plaintiff's mental health treatment history and noted that the only mental health evidence supporting Plaintiff's allegations of disability was the opinion of her social worker Mr. Cohen. R. at 15-18, 328. As discussed above, however, in light of Plaintiff's lack of representation, the ALJ failed to adequately develop the record regarding her alleged physical impairments. *See Stauffer,* 693 F.2d at 308. Absent a sufficiently developed record, it is not possible to determine whether the ALJ's RFC was supported by substantial evidence. *See* 20 C.F.R. § 416.945(a)(3). Remand is appropriate so that the ALJ may fully develop the record concerning Plaintiff's alleged physical impairments in order to determine whether they should be incorporated into his RFC.

Moreover, because the ALJ failed to develop the record with regard to Plaintiff's migraines and shoulder pain, it is not possible to determine whether the ALJ posited appropriate

hypotheticals to the vocational expert. The Third Circuit "requires that a hypothetical include all of the claimant's credibly established limitations." *Covone v. Comm'r of Soc. Sec.*, 142 F.App'x. 585, 587 (3d Cir. 2005). Because the ALJ provided no discussion of Plaintiff's headaches and shoulder pain, it is impossible to determine whether the ALJ's hypotheticals included all of Plaintiff's impairments. Accordingly, on remand the ALJ should fully develop the record concerning Plaintiff's alleged physical impairments in order to determine whether they should be incorporated into the hypotheticals.

## VII. **Conclusion**

It is respectfully recommended that the motion for summary judgment filed by Defendant (*ECF No. 15*) be denied, and that Plaintiff's motion for summary judgment (*ECF No. 9*) be denied to the extent that it requests an award of benefits but granted to the extent that it seeks a vacation of the Commissioner's decision, and a remand for further administrative proceedings in accordance with this opinion.

In accordance with the Magistrate Judges Act, 28 U.S.C. 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: Dec. 23, 2013

LISA PUPO LENIHAN
Chief United States Magistrate Judge

cc:     All counsel of record.